IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CR. NO. 1:16cr 571-MHT |
| v. | ) | [18 U.S.C. §1343; |
| | ) | 18 U.S.C. § 371] |
| BILLY RAY ROBERSON, | ) | |
| DARIN LEWIS, and | ) | |
| ROBERSON EXCAVATION, INC. | ) | |
| | ) | **INDICTMENT** |

The grand jury charges:

## INTRODUCTION

At all times relevant to this indictment:

**A. Background**

1. Defendant Roberson Excavation, Inc. (Roberson Excavation) was a Florida corporation with an office in Milton, Florida. Roberson Excavation was a construction project contractor and specialized in paving, grading, underground utility installation, and other construction projects requiring excavation.

2. Defendant Billy Ray Roberson was a resident of Milton, Florida. Roberson had an ownership interest in Roberson Excavation and served as the president of Roberson Excavation.

3. Defendant Darin Lewis was a resident of Crestview, Florida. Lewis was an experienced construction project worker.

4. The Dale County Water Authority (DCWA) was a publicly owned municipal water authority. As such, the DCWA provided drinking water to businesses and residences in and around Ozark, Alabama.

5. CDG Engineers and Associates, Inc. (CDG) was an Alabama corporation with an office in Andalusia, Alabama. CDG provided environmental engineering consulting services. For example, CDG designed water line installation projects. CDG also worked with municipal water authorities and construction companies to implement water line installation projects.

**B.    The DWSRF Loan to the DCWA**

6. The Drinking Water State Revolving Fund (DWSRF) program was a federal-state program created to provide financial assistance for water infrastructure projects. The Environmental Protection Agency (EPA) administered the DWSRF program with the assistance of state environmental management agencies. In Alabama, the Alabama Department of Environmental Management (ADEM) assisted the EPA in administering the DWSRF program. The DWSRF program worked by providing low interest loans to eligible recipients (including municipal water authorities) for water infrastructure projects. As recipients paid money back to the state revolving fund, new loans were made using the repaid funds.

7. In or about June of 2014, the DCWA applied for and received a $1.62 million DWSRF loan from the ADEM and the EPA. The DCWA intended to use the loaned funds to replace existing 55,000 feet of water line in the "Marley Mill" area of Dale County, Alabama.

**C.    The DCWA's Contract with CDG**

8. Soon after receiving the DWSRF loan, the DCWA entered into a contract with CDG for CDG to assist in the project. Under that contract, CDG was to: (1) design schematics for the project; (2) prepare and publish requests for proposals from contractors; (3) review proposals received and make a recommendation to the DCWA regarding the hiring of a contractor; (4) monitor the work of the hired contractor; and (5) review and approve all requests for payment submitted by the hired contractor.

9. CDG first designed the project schematics and submitted the design to the DCWA. The DCWA and the ADEM approved the design.

10. Subsequently, CDG issued two requests for proposals. The first request for proposal solicited bids for the removal of the existing water line in the Marley Mill area. The second request for proposal solicited bids for the installation of new water lines.

**D.  The DCWA's Contract with Roberson Excavation**

11. Defendant Roberson Excavation submitted the lowest bid for each project. Roberson Excavation's bid for the removal of existing line was $145,034.50. Roberson Excavation's bid for the installation of new line was $779,976.35. The combined bid was $925,976.35.

12. Accordingly, CDG recommended that the DCWA hire Roberson Excavation to work as the general contractor on the Marley Mill project.

13. The DCWA accepted CDG's advice and, on or about June 25, 2014, entered into a contract with Roberson Excavation. The total value of that contract was $925,010.85. Under that contract: (1) Roberson Excavation was to complete the replacement of the water line in the Marley Mill area on or before November 5, 2014, that is, 120 days after July 9, 2014, the date on which work on the project was to begin; (2) for each day after November 5, 2014 that the project was not finished, Roberson Excavation was to pay a $500 penalty; and (3) on or about the 10th of each month, Roberson Excavation could apply to CDG for incremental payments from the DCWA, the amount of the incremental payment to be based on the number of linear feet of water line laid by Roberson Excavation during the preceding month.

**E.  The Pre-Construction Meeting Agreement**

3

14. On or about July 3, 2014, representatives from the DCWA, Roberson Excavation (including Defendant Roberson), and CDG met to discuss project responsibilities. At that meeting, they assigned various responsibilities and memorialized those responsibilities in a signed document that was incorporated into the above-described contracts. Under that agreement:

   a. After it finished installing new line and before placing that new line into service, Roberson Excavation was to subject the new line to hydrostatic, or pressure, testing. Such testing was intended to determine whether the new line had any leaks. Roberson Excavation was to conduct such tests in conformity with American Water Works Association (AWWA) Standard C600. Under that standard, Roberson Excavation was to test by: (1) filling the new line with water to a specific pressure; (2) allowing the water to run through the line for at least two hours; and (3) at the end of the testing period, checking the pressure of the line. If the water pressure was more than five pounds per square inch (psi) lower at the end of the testing period than at the beginning of the testing period, then the line likely had a leak and would be deemed to have failed the pressure test.

   b. If a line passed the pressure test, Roberson Excavation was to then flush the line with running water to clear the line of sediment or debris that might have accumulated therein during the installation process. Thereafter, Roberson Excavation was to treat the water running through the line with a disinfectant.

   c. After the line was pressure tested, flushed, and treated, Roberson Excavation was to then subject the line to bacteriological testing, pursuant to AWWA Standard C651. The purpose of such testing was to determine whether coliform bacteria existed in the line. To perform the bacteriological sample, a Roberson Excavation employee was to withdraw

4

two water samples (taken 16 hours apart from each other) from one location per every 1,200 feet of new water lines, plus one set of samples from the end of the line and at least one from each branch greater than one pipe length. After withdrawing the samples, a Roberson Excavation employee was to transport the samples in a sterile container to a laboratory. There, the samples were to be tested for the presence of coliform bacteria.

        d.      Roberson Excavation was required to have a CDG employee present when it conducted all pressure testing and when it withdrew all samples for bacteriological testing. Before placing a line into service, Roberson Excavation was to provide to CDG the results of all pressure testing and bacteriological testing.

        e.      At the end of the project, Roberson Excavation was to tender to the DCWA a "closeout submittal." In that submittal, Roberson Excavation was to provide the following information about bacteriological testing: (1) the "time and date of water sample collection"; (2) the "[n]ame of the persons collecting samples"; and (3) the "[t]est locations."

## F. Roberson Excavation's Performance

15. On or about July 9, 2014, Roberson Excavation began working on the Marley Mill project. Roberson Excavation did not complete the project by the November 5, 2014 deadline. The DCWA agreed to extend the deadline for nine days—to November 14, 2014. Roberson Excavation did not meet that deadline either. Accordingly, beginning on or about November 15, 2014, Roberson Excavation began to be assessed daily $500 penalties.

16. On or about January 22, 2015, Roberson Excavation hired Defendant Darin Lewis to work on the Marley Mill project. Lewis functioned as a site supervisor for Roberson Excavation.

17. By the time Lewis started, Roberson Excavation had finished removing the existing line and had laid the new line. The tasks to be completed under Lewis's supervision included: (1) boring under United States Highway 231 in order to connect two portions of the new line; (2) connecting other portions of the new line; (3) subjecting the new line to pressure testing; (4) flushing and disinfecting the new line; and (5) drawing samples from the new line for bacteriological testing.

## COUNT 1

18. The factual allegations contained in paragraphs 1 through 6 of this information are realleged and incorporated herein as if copied verbatim.

19. Beginning in or about July of 2014 and continuing until in or about September of 2015, in Dale County, within the Middle District of Alabama, and elsewhere, the defendants,

**BILLY RAY ROBERSON,
DARIN LEWIS, and
ROBERSON EXCAVATION, INC.,**

as well as others, both known and unknown to the grand jury, unlawfully and knowingly agreed, combined, and conspired with others and each other to commit offenses against the United States, specifically, wire fraud, in violation of Title 18, United States Code, Section 1343, that is, the defendants knowingly and willfully executed and attempted to execute a scheme or artifice to obtain, by means of materially false and fraudulent representations, money and property owned by and under the custody and control of the DCWA, all in violation of Title 18, United States Code, Section 371.

## MANNER AND MEANS

20. To perpetuate this scheme, the defendants agreed to not complete the pressure testing and bacteriological testing as required by the July 3, 2014 agreement. The defendants

then submitted to CDG documents falsely certifying that Roberson Excavation had completed such testing pursuant to the contract terms.

21.   By submitting these documents, Roberson Excavation sought and obtained payment from the DCWA.  Because Roberson Excavation had not actually completed the required testing, it was not entitled to the payment it received.

## OVERT ACTS

### A.   False Statements Related to Pressure Testing

22.   In furtherance of the conspiracy to commit wire fraud, on or about February 4, 2014, Roberson Excavation, through Lewis, conducted a pressure test on a portion of the line installed along the east side of United States Highway 231.  Over the course of the six-hour test, the pressure in the line dropped 11 psi.  This drop in pressure indicated that a leak was present in the line.  Nonetheless, on his log, Lewis falsely wrote that the line was "good."  Defendant Roberson was aware that the line likely contained leaks.  Roberson instructed Lewis to manipulate the pressure testing by closing valves in areas likely to have leaks.  As such, a line would pass a pressure test without revealing the presence of a leak.  Roberson informed Lewis that Lewis should do this because Roberson Excavation did not have the necessary time or financial resources to repair leaks.  Roberson told Lewis to refrain from telling a CDG employee about any leaks.

23.   Subsequently, Lewis, acting within the scope of his duties for Roberson Excavation and for the benefit of Roberson Excavation, on or about the following dates, conducted pressure tests: (1) February 5, 2015; (2) February 6, 2015; (3) February 11, 2015; (4) February 12, 2015; (5) February 14, 2015; (6) February 15, 2015; (7) February 16, 2015; (8) February 17, 2015; (9) February 18, 2015; (10) February 19, 2015; (11) February 20, 2015;

and (12) February 22, 2015. In all or some of those instances, Lewis manipulated the test results so as to conceal from CDG and DCWA officials the presence of leaks in the line.

24. After conducting a pressure test, Lewis, acting within the scope his duties for Roberson Excavation and for the benefit of Roberson Excavation, shared with a CDG employee the results of the test. The results Lewis shared were not legitimate and were designed to induce CDG to recommend that the DCWA pay Roberson Excavation.

25. On or about February 24, 2015, an employee of Roberson Excavation, acting on behalf of Roberson Excavation, sent CDG a request for payment. The employee did so by using an official Roberson Excavation email account that sent messages over interstate wires. The request for payment sought $42,048.73 for work completed between January 17 and February 18, 2015—the period during which some of the above-described pressure testing had occurred. The request for payment contained a "Contractor's Certification." In that certification, the contractor affirmed that "the work covered by th[e] payment estimate [had] been completed in accordance with the contract documents." Billy Roberson, acting within the scope of his duties for Roberson Excavation and for the benefit of Roberson Excavation, signed the certification. Roberson did so knowing that the statement was false. The pressure testing had not been completed in conformance with AWWA Standard C600, incorporated into the contract by the July 3, 2014 agreement. Roberson knew that this was so, as Roberson had instructed Lewis to manipulate the testing and had learned from Lewis that the testing had been so manipulated.

**B.  False Statements Related to Bacteriological Testing**

26. In furtherance of the conspiracy to commit wire fraud, Lewis, acting within the scope of his duties for Roberson Excavation and for the benefit of Roberson Excavation: (1) withdrew water samples from sources that were not connected to the new line; (2) transported

8

the samples to the Houston County Regional Water Lab; and (3) on the custody document, falsely noted the source of the water sample so as to make it appear that the sample had come from the new line. Lewis did this on or about the following dates: (1) February 13, 2015; (2) February 17, 2015; and (3) February 19, 2015.

27. Lewis never claimed to be submitting more than one sample from a specific location on the new line. Further, Lewis submitted in total only seven samples—two of which came from the sources noted on the custody documents and five of which did not. As noted, AWWA Standard C651 required the submission of two samples per location and sampling from locations every 1,200 feet of new line. In total, the Marley Mill project entailed the installation of approximately 55,000 feet of new water line, meaning that Roberson Excavation should have drawn two samples from approximately 45 different locations.

28. Billy Roberson was aware that Lewis was falsifying the custody documents related to the water samples. It was to the benefit of Roberson Excavation that Lewis do so. As noted, Lewis had falsified the pressure tests. Further, no Roberson Excavation employee flushed or disinfected the line before conducting the bacteriological tests. As such, the line would likely have tested positive for the presence of coliform bacteria had samples been drawn from it.

29. Thereafter, employees of the Houston County Regional Water Lab tested the samples for the presence of coliform bacteria, finding none. Those employees indicated such on the custody documents. They then transmitted them, via electronic mail using interstate wires, to Roberson Excavation. In total, Roberson Excavation obtained from the water laboratory the results of tests conducted on only seven samples.

30. On or about February 24, 2015, a Roberson Excavation employee, using a business email address belonging to Roberson Excavation, transmitted over interstate wires to

CDG the completed water sample custody documents. Each custody document included the materially false statement of location provided by Lewis. The Roberson Excavation employee sent these documents to CDG for the purposes of complying with the contract and thus obtaining payment from the DCWA. Further, at the time the Roberson Excavation employee sent these documents to CDG, Roberson and Lewis, both of whom acted on behalf of Roberson Excavation, knew that the documents contained materially false statements.

31. As noted, on or about February 24, 2015, an employee of Roberson Excavation, acting on behalf of Roberson Excavation, sent to CDG a request for payment. The employee did so by using an official Roberson Excavation email account that sent messages over interstate wires. The contractor's certification signed by Roberson was materially false in that, not only had Roberson Excavation not complied with the contract as to pressure testing, it had also not complied with the contract documents as to bacteriological testing. Notably, AWWA Standard C651, incorporated into the contract documents by the July 3, 2014 agreement, required two samples per location taken from every 1,200 feet of line. Roberson knew, when he signed the request for payment, that his employees had taken only seven samples for the entire project and that five of those samples had not even been drawn from the new line at all.

C. **Payment to Roberson Excavation**

32. Upon receipt of the above-described false statements, CDG recommended that the DCWA pay Roberson Excavation. Accordingly, the DCWA contacted the ADEM and requested that the ADEM release DWSRF program funds to Roberson Excavation. The ADEM then paid Roberson Excavation $13,763.73 by way of interstate wire transfer. The DCWA would not have requested such payment be made but for Roberson Excavation's materially false statements.

All in violation of Title 18, United States Code, Sections 1343 and 371.

## FORFEITURE ALLEGATION

A.  The allegations contained in count 1 of this indictment are realleged and incorporated herein as if copied verbatim for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

B.  Upon conviction of the offenses in violation of Title 18, United States Code, Sections 371 and 1343, set forth in count 1 of this indictment, the defendants,

**BILLY RAY ROBERSON,
DARIN LEWIS, and
ROBERSON EXCAVATION, INC.,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property constituting or derived from the proceeds obtained directly or indirectly as a result of said offenses including, but not limited to, the following: a forfeiture money judgment.

C.  If any of the property described above, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

*[signature]*
Foreperson

GEORGE L. BECK, JR.
UNITED STATES ATTORNEY

*[signature]*
Jonathan S. Ross
Assistant United States Attorney

*[signature]*
Kevin P. Davidson
Assistant United States Attorney